**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 13-62809-CIV-ROSENBAUM

UNDER ARMOUR, INC.,

        Plaintiff,

vs.

51NFLJERSEY.COM, *et al.*,

        Defendants.

_____/

**PLAINTIFF'S MOTION FOR ORDER**
**AUTHORIZING ALTERNATE SERVICE OF PROCESS ON DEFENDANTS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

    Plaintiff, Under Armour, Inc. ("Under Armour"), hereby moves this Honorable Court for

an order authorizing alternate service of process on Defendants, the Partnerships and

Unincorporated Associations Identified on Schedule "A" attached hereto (collectively

"Defendants"), brought pursuant to Federal Rule of Civil Procedure 4(f)(3). In support thereof,

Under Armour submits the following Memorandum of Law.

**I.**    **INTRODUCTION**

    Under Armour is suing Defendants for trademark counterfeiting and infringement, false

designation of origin, cybersquatting, and common law unfair competition. As alleged in Under

Armour's Complaint, the named Defendants and various unknown associates are knowingly and

intentionally promoting, advertising, distributing, offering for sale, and selling counterfeit and

infringing products, including, at least, pants, shorts, t-shirts, shirts, polo shirts, tank tops, sports

jerseys, sleeveless jerseys, wind resistant jackets, underwear, socks, wristbands, hats, including

baseball caps and visors, sports bags, backpacks, and toiletry bags bearing trademarks which are

substantially indistinguishable from Under Armour's registered trademarks through various fully

interactive commercial Internet websites and commercial iOffer Internet auction stores operating under their partnership and/or unincorporated association names (the "Subject Domain Names and iOffer Auction Stores").

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Under Armour requests an order authorizing service of process on Defendants via e-mail and website publication. E-mail and publication service is appropriate and necessary in this case, because Defendants (1) operate anonymously via the Internet in order to conceal their location and avoid liability for their unlawful conduct; and (2) rely on electronic communications to operate their businesses. Notwithstanding Defendants' concealment of their physical location, Under Armour still has the ability to contact Defendants directly and provide actual notice of Under Armour's claims against them electronically via Defendant's known e-mail addresses. Additionally, Under Armour has created a publication website and posted copies of the Complaint, Motion for Alternate Service, and all other documents on file in this action. Under Armour respectfully submits that an order allowing service of process via e-mail and website publication will benefit all parties and the Court by ensuring Defendants receive immediate notice of the pendency of this action and allowing this action to move forward expeditiously. Absent the ability to serve Defendants by e-mail and publication, Under Armour will almost certainly be left without the ability to pursue a remedy.

## II.     STATEMENT OF FACTS

### A.     Defendants Have Purposefully Falsified Or Concealed Their Public Physical Address Data But Have Provided Valid E-mail Addresses.

According to regulations established by the Internet Corporation for Assigned Names and Numbers ("ICANN"), an individual or entity which registers a domain name is required to provide complete and accurate registration information for the domain name. (See ICANN

Uniform Domain Name Dispute Resolution Policy ¶ 2 attached as Exhibit A to the Declaration of Stephen M. Gaffigan in Support of Plaintiff's Motion for Alternate Service of Process on Defendants ["Gaffigan Decl."], filed herewith.) As demonstrated below, the Defendants operating the Subject Domain Names have ignored the applicable ICANN regulations and either secreted or provided false physical address information to their domain name registrars in order to avoid liability for their criminal conduct.  Moreover, the Defendants operating the iOffer Auction Stores have concealed all of their respective physical address information.

However, Under Armour has been able to provide Defendants with notice of this action via e-mail and via website publication.  Specifically, each Defendant has provided at least one accurate contact e-mail address, either as part of the domain registration data for each of their respective domain names, to Plaintiff's investigator while conducting business via their respective Subject Domain Names and iOffer Auction Stores, and/or directly on the actual Internet websites and auction stores operating under each of their respective domain names and auction stores, including onsite contact forms.  Additionally, Defendants can be contacted via e-mail to the registrar of record for each of their respective Subject Domain Names and iOffer Auction Stores. As a practical matter, e-commerce defendants generally must maintain accurate e-mail addresses where their registrars may communicate with them regarding issues related to the purchase, transfer, and maintenance of their domain name and iOffer auction store accounts. Further, it is necessary for merchants, such as Defendants, who operate entirely online, to provide customers with accurate e-mail addresses by which customers may contact the merchants to ask questions about the merchants' products, place orders from the merchants' Internet websites and iOffer auction stores, and receive information from the merchants regarding the shipments of orders. Additionally, Under Armour has created a publication website

appearing at the URL http://servingnotice.com/uapp1/ such that anyone accessing the website will find copies of all documents currently filed in this action.

Under Armour's counsel obtained the publicly available domain name registration records ("WHOIS" records) for the fully interactive commercial Internet websites operating under Defendants 1-27's partnership and/or unincorporated association names (the "Subject Domain Names") identifying the contact information those Defendants provided their registrars. (See Gaffigan Decl. ¶ 4.)  The relevant WHOIS domain registration records identify the Registrant and contact information as set forth in the summary chart of the WHOIS domain registration reports attached as Exhibit B to the Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation ["Gaffigan Decl. in Support of Application for TRO"] ¶ 3, ECF No. 4-7.[1]

Under Armour's counsel requested Huang Yu Ting ("Ting"), a researcher in the People's Republic of China ("China"), verify the accuracy of the physical addresses purportedly based in China provided by Defendants 1-27 in connection with the WHOIS registration data for the Subject Domain Names and also research alternative addresses for Defendants. (Gaffigan Decl. ¶ 5; Declaration of Huang Yu Ting in Support of Plaintiff's *Ex Parte* Application for Alternate Service ["Ting Decl."] ¶ 3, filed herewith.) Ting investigated all of the China-based physical contact addresses provided by Defendants in connection with the WHOIS domain registrations for the relevant Subject Domain Names and determined each to be invalid means for service of process on those Defendants. (See Ting Decl. ¶ 4 and Exhibit "A" attached thereto, a chart

---

[1] Defendants 28-32 run commercial iOffer Internet auction stores as opposed to commercial Internet websites; as such, there is no publicly available registration data associated with Defendants 28-32's partnership and unincorporated association names (the "iOffer Auction Stores").

outlining Ting's investigation and the specific basis for her determination that the physical contact addresses are false, incomplete, and/or invalid for service on the relevant Defendants.)

Additionally, Under Armour's counsel requested Joey Alvarez ("Alvarez") of Investigative Consultants, a licensed private investigative firm headquartered in California, verify the accuracy of the purported physical addresses based outside of China provided by Defendants 1-27 in connection with the WHOIS registration data for the relevant Subject Domain Names. (Gaffigan Decl. ¶ 5; Declaration of Joey Alvarez in Support of Plaintiff's Motion for Order Authorizing Alternate Service of Process on Defendants ["Alvarez Decl."] ¶ 3, filed herewith.) Alvarez investigated all of the purported physical addresses based outside of China and likewise determined each to be invalid for service of process on the relevant Defendants. (See Alvarez Decl. ¶ 4 and Exhibit "A" attached thereto, outlining Alvarez's investigation and the specific basis for his determination that the physical addresses and contact information are false, incomplete, and/or invalid for service on the relevant Defendants.)

The evidence makes it abundantly clear that Defendants intentionally falsified their physical address data in violation of ICANN's rules. Moreover, after conducting a diligent investigation, Under Armour was unable to identify any valid physical address for service of process on the Defendants. (Gaffigan Decl. ¶ 5; Ting Decl. ¶ 5; Alvarez ¶ 4.) Thus, based on Defendants' provision of invalid or concealed[2] postal addresses and Under Armour's inability to find another physical address for them, Under Armour cannot serve Defendants by traditional means.

Despite falsifying their physical contact address data, Defendants have provided accurate contact e-mail address data.  In particular, each Defendant has provided at least one accurate

---

[2] As Defendants 28-32 operating the iOffer Auction Stores have completely concealed any publicly available physical address information, Ting and Alvarez were unable to verify any physical addresses in regards to those Defendants. (See Gaffigan Decl. ¶ 5, n.1.)

contact e-mail address to either domain name registrar for the corresponding domain name, to

Under Armour's investigator while conducting business via their respective Subject Domain

Names and iOffer Auction Stores, and/or directly on the websites and auction stores operating

under the Subject Domain Names and iOffer Auction Stores.  (Gaffigan Decl. ¶ 6.)  Indeed,

Plaintiff's investigator, Eric Rosaler ("Rosaler") affirmatively exchanged e-mail correspondence

with the majority of Defendants' customer service e-mail addresses while making covert

purchases via the Subject Domain Names and iOffer Auction Stores. (See Declaration of Eric

Rosaler in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order,

Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the Counterfeiting

Operation ["Rosaler Decl. in Support of Application for TRO"] ¶¶ 4-6 and p. 9 – Schedule "A"

listing Defendants and Associated Customer Service E-mail Addresses [ECF No. 4-10],

incorporated herein by reference.)  It was through e-mail that Rosaler confirmed his orders and

received instructions to effect payment for the Under Armour branded items he purchased from

each of the Subject Domain Names and iOffer Auction Stores.  (See Rosaler Decl. in Support of

Application for TRO at ¶¶ 4-6; see e.g., Composite Exhibits A through D to the Rosaler Decl. in

Support of Application for TRO [ECF No. 4-11 through ECF No. 4-14].)  Defendants can also

be apprised of this action via e-mail to the registrar of record for each of the Subject Domain

Names and iOffer Auction Stores.  (Gaffigan Decl. ¶ 6.)

More importantly, Defendants have received actual notice of this action via e-mail and

publication. Under Armour notified Defendants of the injunctive relief granted herein

electronically by serving copies of, *inter alia*, the Complaint, the Court's Temporary Restraining

Order, the Court's Order Granting Plaintiff's Application for Preliminary Injunction, and

supporting papers by e-mail. (See Gaffigan Decl. ¶ 7; see also ECF Nos. 14 and 19.)  At least

one e-mail for each Defendant was not bounced back nor returned as "undeliverable," thereby

demonstrating the e-mails were delivered and the e-mail addresses are valid and operational.

(Id.) See Chanel, Inc., v. Zhixian, Case No. 10-cv-60585-JIC, 2010 WL 1740695, at *3 (S.D.

Fla. April 29, 2010) (finding that e-mails sent to e-mail addresses supplied by Defendant to his

domain name registrars that did not bounce back presumptively reached Defendant). Accord

Bottega Veneta Int'l S.A.R.L. v. Pan, Case No 10-62334-CIV, 2010 WL 8424472 at *2 (S.D.

Fla. Dec. 9, 2010) (same). Additionally, Defendants have been served via e-mail to the

Defendants' agent, the registrar of record, for each of the corresponding Subject Domain Names.

(See ECF Nos. 16 and 20.)

Furthermore, Under Armour has created a website appearing at the URL

http://servingnotice.com/uapp1/ whereon copies of the Complaint and all other pleadings and

documents on file in this action are posted.  The address and a link to the publication site have

been provided to Defendants via their known e-mail addresses and to Defendants' registrars for

the Subject Domain Names.  (See Gaffigan Decl. ¶ 8.)

**B. Defendants Rely Solely on Electronic Communications.**

Defendants have structured their website and iOffer auction store businesses so that the

sole means for customers to purchase the Defendants' counterfeit goods at issue is by placing an

order over the Internet. Defendants take and confirm orders through their websites and auction

stores, and they offer to answer inquiries via e-mail or via online chat functions on their Internet

websites and auction stores.  The orders Rosaler placed while investigating the Subject Domain

Names and Auction Stores were processed entirely online, which included providing shipping

and billing information, and confirmation of the order via e-mail correspondence.  (Rosaler Decl.

¶¶ 4-6 and Comp. Exs. A through D; see also p. 9 to the Rosaler Decl., Schedule "A," identifying

the customer service email addresses Defendants used to communicate with Rosaler in connection with his orders.)  Furthermore, Defendants instruct customers to contact them via e-mail with any questions or concerns. (Id.)  Indeed, following submission of his orders via the website operating under the Subject Domain Name, efeelsports.com, and the commercial Internet auction store operating under the iOffer Auction Store, hongtai8888, Rosaler was expressly instructed by each of those Defendants to use e-mail as his means of contact. (See, e.g., Rosaler Decl. ¶¶ 4-5 and Comp. Exs. A through B thereto.) Clearly, Defendants rely on electronic means as reliable forms of contact.

## III.    ARGUMENT

Pursuant to Federal Rule of Civil Procedure 4(h)(2), a foreign partnership or other unincorporated association may be served with process in any manner prescribed by Rule 4(f). Federal Rule of Civil Procedure 4(f)(3), allows a district court to authorize an alternate method for service to be effected upon a foreign defendant, provided that it is not prohibited by international agreement and is reasonably calculated to give notice to the defendant. In the instant matter, alternate service of process via e-mail and website publication are appropriate given that Defendants have established extensive Internet-based businesses by which they rely solely on electronic communications for their operation and because of the Defendants' decisions to conceal their physical locations.  Accordingly, this Court should permit service by e-mail and publication on Defendants.

### A.    The Court May Authorize Service via Electronic Mail and Publication Pursuant to Federal Rule of Civil Procedure 4(f)(3).

Federal Rule of Civil Procedure 4(h)(2) allows a foreign business entity to be served with process "in any manner prescribed by Rule 4(f)," including any manner ordered under Rule 4(f)(3). U.S. Commodity Futures Trading Comm'n v. Aliaga, 272 F.R.D. 617, 619 (S.D. Fla.

2011). A foreign partnership or other unincorporated association can therefore be served pursuant to Rule 4(f)(3). Id. Federal Rule of Civil Procedure 4(f)(3) allows alternative methods for service of process, so long as those methods are not prohibited by international agreement and are directed by the Court. See Prewitt Enters., Inc. v. The Org. of Petrol. Exporting Countries, 353 F.3d 916, 923 (11th Cir. 2003). See also Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Case No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007); Rio Props. Inc., v. Rio Int'l Interlink, 284 F.3d 1007, 1014 (9th Cir. 2002).  In fact, "as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." Chanel, Inc. v. Zhixian, 2010 WL 1740695, at * 2 quoting Rio Props., 284 F.3d at 1014 (citing Mayoral–Amy v. BHI Corp., 180 F.R.D. 456, 459 n. 4 (S.D. Fla. 1998)).

The plain language of Rule 4(f)(3) reflects that the decision to issue an order allowing an alternate means of service lies within the sole discretion of the District Court. Prewitt Enters., Inc., 353 F.3d at 921; Rio Props., 284 F.3d at 1116. See, e.g., Brookshire Bros., Ltd., 2007 WL 1577771, at *2 (noting that "district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service"); In re Int'l Telemedia Assocs., 245 B.R. 713, 720 (N.D. Ga. 2000) (noting that Rule 4(f)(3) is designed to allow courts discretion and broad flexibility to tailor the methods of service for a particular case). Rule 4 does not require a party attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under subsection 4(f)(3).  Rio Props., 284 F.3d at 1114-15; see also Brookshire Bros., Ltd., No. 05-CIV-21962, 2007 WL 1577771, at *1 (S.D. Fla. May 31, 2007).

In Brookshire, the Honorable Judge Marcia G. Cooke allowed substitute service on a party's attorney pursuant to Rule 4(f)(3) holding as follows:

> Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f) and each subsection is separated from the one previous merely by the simple conjunction 'or.' Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates the primacy, and certainly Rule 4(f)(3) indicates no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

Brookshire Bros., Ltd., 2007 WL 1577771, at *1 (quoting Rio Props., 284 F.3d at 1015). Accord TracFone Wireless, Inc. v. Bitton, 278 F.R.D. 687, 692 (S.D. Fla. Jan. 11, 2012) (noting that, in regards to Rule 4(f)(3), "there is no indication from the plain language of the Rule that the three subsections, separated by the disjunctive "or," are meant to be read as a hierarchy."). Judge Cooke further held, "[t]he invocation of Rule 4(f)(3), therefore, is neither a last resort nor extraordinary relief." Brookshire Bros., Ltd., 2007 WL 1577771, at *2.

Additionally, the Constitution itself does not mandate that service be effected in any particular way. Rather, Constitutional due process considerations require only that the method of service selected be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Brookshire Bros., Ltd., 2007 WL 1577771, at *1 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)); see also TracFone Wireless, Inc., 278 F.R.D. at 692; Rio Props., 284 F.3d at 1016. Accordingly, federal courts have allowed a variety of alternative service methods, including service by e-mail and publication, where a plaintiff demonstrates the likelihood that the proposed alternative method of service will notify a defendant of the pendency of the action. See, e.g., Rio Props., 284 F.3d at 1017 (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); In re Int'l Telemedia Assocs., 245 B.R. at 721 ("If any methods of communication can be reasonable

calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them."). National Association for Stock Car Auto Racing, Inc. v. Does, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (in "acknowledging the realities of the twenty-first century and the information age, the Court determined that the most appropriate place for publication was [Plaintiff's Website].").

Here, service on Defendants by e-mail and website publication will satisfy due process by apprising them of the action and giving them the opportunity to answer Under Armour's claims. Defendants have secreted their physical location in a manner that prohibits Under Armour from physically serving process on them. (See Gaffigan Decl. ¶ 5; Ting Decl. ¶ 4 and Exhibit "A" thereto; Alvarez ¶ 4 and Exhibit "A" thereto.) Indeed, Under Armour has recently verified that each Defendant has at least one operational e-mail address, demonstrating that this means of contact is not just effective, but the most reliable means of communicating with that Defendant, and consequently, the most reliable means of providing Defendants with notice of this action. (See Gaffigan Decl. ¶ 7; see also ECF Nos. 14 and 19.) Moreover, service via publication will be an additional source of reliability as Defendants can see copies of the Complaint and all other documents in this matter electronically via their Internet browser.

E-mail service on an online business defendant is appropriate and constitutionally acceptable in a case such as this when the plaintiff is unable to personally serve the defendants at a physical address and has proven that e-mail is the most effective means of providing the defendants notice of the action. See Rio Properties, 284 F.3d at 1017 (concluding "not only that service of process by e-mail was proper—that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond—but in this case, it was the method of service most likely to reach [the defendant]."). See also Popular Enters., LLC v.

11

Webcom Media Group, Inc., 225 F.R.D. 560, 562 (E.D. Tenn. 2004) ("Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the court to direct service upon defendant by e-mail. The rule is expressly designed to provide courts with broad flexibility in tailoring methods of service to meet the needs of particularly difficult cases. Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts) (citation omitted). The Rio Properties and Popular Enters., LLC courts each determined e-mail service to be appropriate in part because, as in this case, the defendants conducted their business over the Internet, used e-mail regularly in their business, and encouraged parties to contact them via e-mail.

In cases that are factually similar to this one, a number of Courts have held that alternate forms of service pursuant to Rule 4(f)(3), such as e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." See TracFone Wireless, Inc., 278 F.R.D. at 693 (finding that service of process by e-mail was reasonably calculated to apprise defendant of the action and give it an opportunity to respond); Popular Enters., LLC, 225 F.R.D. at 563 (same); Chanel, Inc. v. Zhixian, Case No. 10-cv-60585-JIC, 2010 WL 1740695 (S.D. Fla. April 29, 2010) (e-mail service "reasonably calculated to notify Defendants of the pendency of this action and provide him with an opportunity to present objections."); In re Int'l Telemedia Associates, 245 B.R. at 722 ("A defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party" (concluding e-mail and facsimile service to be appropriate)); Chanel, Inc. v. Zhibing, Case No. 09-cv-02835, 2010 WL 1009981, at *4 (W.D. Tenn. March 17, 2010) (stating that e-mail service has the "greatest likelihood" of

reaching e-commerce merchants and noting, "The federal judiciary's own CM/ECF system alerts parties . . . by e-mail messages." Alternate service via e-mail granted).[3]  Under Armour submits that allowing e-mail service in the present case is appropriate and comports with constitutional notions of due process, particularly given Defendants' decision to conduct their illegal Internet-based businesses anonymously.

Additionally, service of a defendant via publication on a website has been deemed an appropriate means of service by publication.  National Association for Stock Car Auto Racing, Inc. v. Does, 584 F. Supp. 2d 824, 826 W.D.N.C. 2008).[4]  A proposed method of publication

---

[3] See Louis Vuitton Malletier, S.A. v. Bagmild.com, Case No. 0:13-cv-62613-RSR (S.D. Fla. Dec. 12, 2013) (Order granting alternative service via the e-mail addresses the defendants provided as part of the domain registration data for each of their respective domain names or on their websites, including onsite contact forms, or via e-mail to the registrar of record for each of their respective domain names); adidas AG v. 2013jeremyscottxadidas.com, Case No. 13-cv-61867-RSR (S.D. Fla. Dec. 5, 2013) (same); Chanel, Inc. v. herechanel.com, Case No. 13-61695 (S.D. Fla. Oct. 3, 2013) (same); Tiffany (NJ), LLC v. Jianfang, Case No. 13-61470-RSR (S.D. Fla. Sept. 20, 2013) (Order granting alternative service via the e-mail addresses the defendants provided as part of the domain registration data for each of their respective domain names, including service via registrar for each of the domain names and auction stores, or via e-mail to the e-mail addresses identified directly on the Internet websites and auction stores operating under each of their respective corresponding domain names and auction stores, including customer service e-mail addresses and onsite contact forms). See also Chanel, Inc. v. chanelestore.com, Case No. 13-cv-62249-WPD (S.D. Fla. Dec. 10, 2013) (same); Louis Vuitton Malletier, S.A. v. 2013bagsale.com, Case No. 13-cv-23921-KMM (S.D. Fla. Dec. 9, 2013) (same); Gucci America, Inc. v. annytrade.org, Case No. 13-cv-61721-JIC (S.D. Fla. Oct. 25, 2013) (same); Abercrombie & Fitch Trading Co. v. 60discountoutlet.com, Case No. 13-cv-23618-PCH (S.D. Fla. Oct. 11, 2013) (same); S.A.S. Jean Cassegrain v. longchampsalevip.com, Case No. 13-23576-PCH (S.D. Fla. Oct. 11, 2013) (same); Chanel, Inc. v. 168-viptrade.com, Case No. 13-cv-61552-WJZ (S.D. Fla. Sept. 17, 2013) (same); Lacoste Alligator S.A. v. aaafashion.ru, Case No. 13-cv-61832-WJZ (S.D. Fla. Sept. 10, 2013) (same).

[4] See also Louis Vuitton Malletier, S.A. v. Bagmild.com, Case No. 0:13-cv-62613-RSR (S.D. Fla. Dec. 12, 2013) (Order granting alternative service via e-mail and website publication); adidas AG v. 2013jeremyscottxadidas.com, Case No. 13-cv-61867-RSR (S.D. Fla. Dec. 5, 2013) (same); Chanel, Inc. v. herechanel.com, Case No. 13-61695 (S.D. Fla. Oct. 3, 2013) (same); Tiffany (NJ), LLC v. Jianfang, Case No. 13-61470-RSR (S.D. Fla. Sept. 20, 2013) (same); Louis Vuitton Malletier, S.A. v. 2013bagsale.com, Case No. 13-cv-23921-KMM (S.D. Fla. Dec. 9, 2013) (same); Gucci America, Inc. v. annytrade.org, Case No. 13-cv-61721-JIC (S.D. Fla. Oct. 25, 2013) (same); Abercrombie & Fitch Trading Co. v. 60discountoutlet.com, Case No. 13-cv-

need only be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." National Association for Stock Car Auto Racing, Inc. v. Does, 584 F. Supp. 2d 824, 826 (W.D. N.C. 2008) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 315-16, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). In National Association for Stock Car Auto Racing, Inc. v. Does, the United States District Court for the Western District of North Carolina determined that the plaintiff could serve "Doe" defendants and apprise those defendants of a pending preliminary injunction hearing via publication on the plaintiff's website. Id.

Accordingly, Under Armour has created a website appearing at the URL http://servingnotice.com/uapp1/, whereon copies of the Complaint, and pleadings, documents, and orders issued in this action have been posted. A link to the publication website has been be e-mailed directly to all of Defendants' known email accounts. (Gaffigan Decl. ¶ 8.) Under Armour respectfully submits that publication of the Summonses and Complaint at the http://servingnotice.com/uapp1/ website provides publication notice to Defendants sufficient to meet the due process requirements for service of process and notice pursuant to Federal Rules of Civil Procedure 4 and 65, respectively, and apprise Defendants and any other interested parties of the pendency of the action and afford Defendants an opportunity to present their objections.

## B.    E-mail and Publication Service Are Not Prohibited by International Agreement.

As Defendants' addresses are unknown, Under Armour respectfully submits that the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague Service Convention") does not apply in this case. (Gaffigan

23618-PCH (S.D. Fla. Oct. 11, 2013) (same); S.A.S. Jean Cassegrain v. longchampsalevip.com, Case No. 13-cv-23576-PCH (S.D. Fla. Oct. 11, 2013) (same); Chanel, Inc. v. 168-viptrade.com, Case No. 13-cv-61552-WJZ (S.D. Fla. Sept. 17, 2013) (same); Lacoste Alligator S.A. v. aaafashion.ru, Case No. 13-cv-61832-WJZ (S.D. Fla. Sept. 10, 2013) (same).

Decl. ¶ 9 and Composite Exhibit "B" attached thereto, Hague Service Convention and list of signatory Members.)[5] Based upon the WHOIS domain registration records, shipping information, PayPal, Inc. and bank transfer payment information, and the investigative data provided thereunder, Under Armour has good cause to suspect Defendants are all residents of The People's Republic of China ("China") or other foreign countries. (Gaffigan Decl. ¶ 10; Compl. ¶ 7.) As noted above, Under Armour has diligently investigated Defendants and attempted to ascertain valid addresses for service of process on Defendants, without success. (Gaffigan Decl. ¶ 5; Ting Decl. ¶¶ 4-5; Alvarez ¶ 4.) Thus, as a result of the Defendants' own efforts to conceal their locations, Under Armour is unable to determine their physical whereabouts.  (Id.)  According to Article 1 of the Convention, "[the] convention shall not apply where the address of the person to be served with the document is not known." See Hague Convention, Art. 1, 20 U.S.T. 361 (1969).  Consequently, although the United States and China are both signatories to the Hague Convention, the Hague Convention does not apply in this case. (See Gaffigan Decl. ¶ 8 and Comp. Ex. D thereto.) See also U.S. Commodity Futures Trading Comm'n v. Rubio, Case No. 12-CV-22129, 2012 WL 3614360, at *2 (S.D. Fla. Aug. 21, 2012) (e-mail service authorized, stating that "the Hague Convention is not applicable here because it 'shall not apply where the address of the person to be served with the documents is not known.'"); Philip Morris USA Inc. v. Veles Ltd., No. 06 Civ. 2988, 2007 WL 725412, at *2 (S.D.N.Y. March 12, 2007) (e-mail service authorized and the Hague Convention did not apply because, despite physical "addresses" having been provided to defendants' registrars, the actual addresses could not be confirmed as valid).

---

[5] See also Hague Service Convention, November 15, 1965, 20 U.S.T. 361, available at http://www.hcch.net/index_en.php?act=conventions.text&cid=17 (last visited January 15, 2014) (full text of the Hague Service Convention); http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited January 15, 2014) (Status Table: listing the current contracting states).

Moreover, though it does not expressly authorize e-mail service, the Hague Convention does not preclude e-mail service, and thus, is no bar to court-directed e-mail service under Rule 4(f)(3). In fact, U.S. Courts have routinely authorized international mail and e-mail service notwithstanding the applicability of the Hague Convention. See, e.g., Brockmeyer v. May, 383 F.3d 798, 800 (9th Cir. 2004) ("We join the Second Circuit in concluding that the Convention ... does not prohibit service of process by international mail"); MPS IP Services Corp. v. Modis Communications, Inc., 2007 WL 723841 (Hague Convention, which Canada is a signatory, did not prohibit e-mail service upon Canadian defendants); Popular Enters., LLC, 225 F.R.D. at 562.

## C.    E-mail and Publication Service Are Not Prohibited by International Law.

The issuance of the requested service order pursuant to Rule 4(f)(3) is not contrary to or likely to offend the law of the People's Republic of China. (Gaffigan Decl. ¶ 11.) The law of the People's Republic of China does not appear to prohibit the service of process by e-mail and allows for alternate service means in certain circumstances. (See id. and Exhibit "C" attached thereto, "Civil Procedure Law of the People's Republic of China".) For example, Article 80 of the law specifically provides that "[i]f direct service of a litigation document proves difficult . . . it may be served by post . . . ." (Id.)  Additionally, Article 84 of the Civil Procedure Law of the People's Republic of China provides that "[i]f the whereabouts of a recipient ... is unknown ... the document shall be served by public announcement." Chanel, Inc. v. Zhixian, No. 10-CV-60585, 2010 WL 1740695, at *2 n.2 (S.D. Fla. April 29, 2010). Hence, Under Armour submits that allowing service of process upon Defendants in this case via e-mail would be consistent with and not prohibited by the Civil Procedure Law of the People's Republic of China. See id. ("Service by e-mail would not appear to conflict with [Article 84 of the Civil Procedure Law of the People's Republic of China], and it is questionable whether service effected under Rule 4(f)(3) must always align with the methods authorized in the foreign country where service will take

place") (citing <u>Rio Props.</u>, 284 F.3d at 1015 n. 5 (noting that the rule prohibiting a service method that would violate the foreign state's laws applies only to service effected under Rule 4(f)(2)).)  Under Armour further submits that posting copies of the Summonses and Complaint on its publication website will satisfy the non-specific publication requirement of Article 84 of the Civil Procedure Law of the People's Republic of China.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff, Under Armour, Inc., respectfully request this Court grant the present motion to serve the Summonses, the Complaint, and all subsequent pleadings and discovery upon each Defendant in this action:

(1) via the e-mail addresses provided by that Defendant (i) as part of the domain registration data for each of its respective domain name, or (ii) via registrar for each of the domain names and iOffer auction stores, or (iii) on the actual websites and iOffer  auction stores, including customer service e-mail addresses and onsite contact forms; or

(2) via publication by posting copies of the Complaint, Summonses, and all subsequent pleadings and discovery on Plaintiff's serving notice website appearing at the URL

http://servingnotice.com/uapp1/.

DATED: February 14, 2014.          Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: ___s/ T. Raquel Rodriguez-Albizu_____
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Rodriguez-Albizu (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net

E-mail: Raquel@smgpa.net

Attorneys for Plaintiff

SCHEDULE "A"
### DEFENDANTS BY NUMBER AND
### SUBJECT DOMAIN NAMES AND iOFFER AUCTION STORES

| Defendant Number | Defendant/Subject Domain Names and iOffer Auction Stores |
|---|---|
| 1 | 51nfljersey.com |
| 2 | 2013bestjerseysoutlet.com |
| 3 | 2013jerseysbynike.com |
| 4 | anynfljerseys.com |
| 5 | aolmlb.co |
| 5 | cnjerseys.cc |
| 5 | cnjerseys.co |
| 6 | bematsoce.com |
| 7 | cheapjerseysaleonline.com |
| 8 | cheapjerseysking.com |
| 9 | cheapjerseysshop.cc |
| 10 | cheapnhljerseysamerica.com |
| 10 | neweraretailstore.net |
| 11 | cooljerseysshop.com |
| 12 | efeelsports.com |
| 13 | gulfofmainefish.com |
| 14 | jersell.com |
| 15 | jerseychinashop.net |
| 16 | jerseysdh.com |
| 17 | jerseyshotbot.com |
| 18 | jerseysmass.com |
| 18 | 2013nfljerseyswholesale.com |
| 19 | jerseysmen.cc |
| 20 | jerseyspos.com |
| 20 | reallycheapjerseys.com |
| 21 | jerseysstay.com |
| 22 | jersey-styles.com |
| 23 | mlbsportjersey.com |
| 24 | msnjerseys.com |
| 25 | projerseysworld.com |
| 26 | selloffjerseys.com |
| 27 | vipfanjerseys.com |
| 28 | hongtai8888 |
| 29 | ifeng1688 |

| Defendant Number | Defendant/Subject Domain Names and iOffer Auction Stores |
|---|---|
| 30 | kuailetianshi168 |
| 31 | marcyfeinberg |
| 32 | ssddshirt |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2013, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF. I also certify that a true copy of the foregoing

was served this 14th day of February, 2014, by posting copies of the same on the URL appearing

at http://servingnotice.com/uapp1/ and via electronic mail at the electronic mail address

identified below:

| Defendant Number | Subject Domain Names and iOffer Auction Stores | Email Addresses |
|---|---|---|
| 1 | 51nfljersey.com | 1796827051@qq.com<br>yourjerseyhome@hotmail.com |
| 2 | 2013bestjerseysoutlet.com | yuhisu@163.com<br>sunny@alibabaec.com |
| 3 | 2013jerseysbynike.com | 3longhui@gmail.com<br>Jerseysbynike@hotmail.com<br>Jerseysbynike@yahoo.com<br>jerseysbynike01@hotmail.com<br>jerseysbynike01@yahoo.com |
| 4 | anynfljerseys.com | info@dingdian.com<br>jerseyshopinchina@hotmail.com |
| 5 | aolmlb.co | nfljerseyssupplier@hotmail.com<br>CNJerseys@hotmail.com |
| 5 | cnjerseys.cc | nfljerseyssupplier@hotmail.com<br>CNJerseys@outlook.com |
| 5 | cnjerseys.co | nfljerseyssupplier@hotmail.com |
| 6 | bematsoce.com | bematesoce@gmail.com<br>runfangly@gmail.com<br>doorjerseys@hotmail.com |
| 7 | cheapjerseysaleonline.com | gd20130726003@sete.com<br>wuxingcomeon@hotmail.com<br>cheapjerseysaleonline@hotmail.com |
| 8 | cheapjerseysking.com | cheapjerseysking@yahoo.com<br>cheapjerseysking@hotmail.com<br>gd_sohu@yahoo.cn |
| 9 | cheapjerseysshop.cc | contact@privacyprotect.org<br>168168shop@gmail.com<br>jerseys.mn@gmail.com |
| 10 | cheapnhljerseysamerica.com | dagenmd@163.com |
| 10 | neweraretailstore.net | duohuir@163.com |
| 11 | cooljerseysshop.com | jhw_19@gmail.com<br>malongxin123@hotmail.com |

| Defendant Number | Subject Domain Names and iOffer Auction Stores | Email Addresses |
|---|---|---|
| | | hotsell-jerseys@hotmail.com |
| 12 | efeelsports.com | justhelpme@yeah.net<br>nhatservice@gmail.com<br>efeelsports@gmail.com |
| 13 | gulfofmainefish.com | wowofafa46544@hotmail.com<br>nflwebstore@gmail.com |
| 14 | jersell.com | 397124251@qq.com<br>jerseyfactorystore@hotmail.com<br>jerseyfactorystore@yahoo.com<br>sale@jerseyfactorystore.com |
| 15 | jerseyschinashop.net | admin@jerseyschinashop.net<br>service@easychinabuy.com |
| 16 | jerseysdh.com | jerseysdh@gmail.com<br>janemimin@gmail.com<br>zhengranita@gmail.com<br>janejersey019@gmail.com |
| 17 | jerseyshotbot.com | DESIGNERSUNGLASSES2012@HOTMAIL.COM<br>jerseyshotbot@hotmail.com |
| 18 | jerseysmass.com | colorolf@gmail.com<br>contact2@jerseyslord.com |
| 18 | 2013nfljerseyswholesale.com | colorolf@gmail.com |
| 19 | jerseysmen.cc | 200755689@qq.com<br>lancejeffy1377@yeah.net<br>JerseysMen@hotmail.com |
| 20 | jerseyspos.com | ka87asdj8adsfkj@126.com |
| 20 | reallycheapjerseys.com | jozeyork624erg@yahoo.com<br>e-commercecs@live.com<br>ecommercebuy@gmail.com |
| 21 | jerseysstay.com | contact@privacyprotect.org<br>jerseysstay@hotmail.com |
| 22 | jersey-styles.com | TANG@ZONEHANG.COM<br>weddingdress08@163.com<br>jerseystyle@yahoo.com<br>jerseystylefirst@hotmail.com<br>jerseyfirst@hotmail.com<br>jereysecond@hotmail.com |
| 23 | mlbsportjersey.com | xiandailihao@163.com |
| 24 | msnjerseys.com | info@dingdian.cn<br>Msnjerseys@hotmail.com |
| 25 | projerseysworld.com | michaelwen2008@gmail.com<br>info@topjerseyworld.com<br>topjerseyworld@hotmail.com |
| 26 | selloffjerseys.com | rasfasfa@fasf.com<br>deathhead@163.com |

| Defendant Number | Subject Domain Names and iOffer Auction Stores | Email Addresses |
|---|---|---|
|  |  | jerseyscommunity@hotmail.com |
| 27 | vipfanjerseys.com | vipfanjerseys@hotmail.com<br>vipfanjerseys@hotmail.com |
| 28 | hongtai8888 | pootoo123@126.com<br>aoao0920@126.com |
| 29 | ifeng1688 | likindg@126.com |
| 30 | kuailetianshi168 | guonianla1588@163.com |
| 31 | marcyfeinberg | huizhang19810219@gmail.com |
| 32 | ssddshirt | pgzhouw@163.com |

    __s/ *T. Raquel Rodriguez-Albizu*_____
           T. Raquel Rodriguez-Albizu