UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62809-CIV-ROSENBAUM/HUNT

UNDER ARMOUR, INC.,

        Plaintiff,

vs.

51NFLJERSEY.COM, *et al.*,

        Defendants.

_____/

## ORDER ON MOTION FOR FINAL DEFAULT JUDGMENT

This cause is before the Court upon Plaintiff's Motion for Entry of Final Default Judgment against Defendants [ECF No. 31]. The Court has carefully considered the Motion and the entire case file, including the entry of default against Defendants [ECF No. 29], and is otherwise fully advised in the premises.

In the pending Motion [ECF No. 31], Plaintiff seeks the entry of default final judgment against Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, and common-law unfair competition. Plaintiff further requests that the Court (1) enjoin Defendants from producing or selling goods that infringe its trademarks; (2) disable, or at Plaintiff's election, transfer the domain names at issue to Plaintiff; and (3) award statutory damages and costs.

---

[1] Defendants are the Partnerships and Unincorporated Associations identified on Schedule "A" of Plaintiff's Motion for Entry of Final Default Judgment. *See* ECF No. 31 at 16-17. Plaintiff voluntarily dismissed Defendant Does 1-100. *See* ECF No. 32.

## I. INTRODUCTION

Plaintiff brought the instant action against Defendants for trademark counterfeiting and infringement under section 32(a) of the Lanham Act, 15 U.S.C. § 1114; false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and common-law unfair competition. ECF No. 1. The Complaint alleges that Defendants are promoting, advertising, distributing, offering for sale and selling counterfeit and infringing Plaintiff's branded products within the Southern District of Florida through fully interactive commercial Internet websites and commercial Internet iOffer auction stores operating under their partnership and/or association names identified on Schedule "A" to Plaintiff's Motion for Entry of Final Default Judgment (collectively the "Subject Domain Names and iOffer Auction Stores"). *See* ECF No. 31 at 16-17.

Plaintiff further asserts that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff because Defendants have (1) deprived Plaintiff of its right to determine the manner in which its trademarks are presented to the public through merchandising, (2) defrauded the public into thinking Defendants' goods are goods authorized by Plaintiff, (3) deceived the public as to Plaintiff's association with Defendants' goods and the websites that market and sell the goods, and (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill, as well as the commercial value of Plaintiff's trademarks.

## II. BACKGROUND[2]

### A. Factual Background

Plaintiff, Under Armour, Inc., is the registered owner of the following valid trademark registrations, issued by the United States Patent and Trademark Office (collectively, the "Under Armour Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| [UA logo] | 2,727,031 | June 17, 2003 | IC 025: Clothing, namely, shirts, hats, pants, t-shirts, underwear, brassieres, shorts, headbands, wristbands and socks. |
| [UA logo] | 2,951,069 | May 17, 2005 | IC 025: Wristbands, headbands, rain suits, jackets, socks, skirts, athletic sleeves, hoods, skull wraps, skull caps, vests, hats, shorts, shirts, leggings, pants, headwear for winter and summer, underwear, tank tops, bras, girdles. |
| [UA logo] | 2,991,125 | September 6, 2005 | IC 018: Sport bags, travel bags, duffel bags, backpacks, sack pacs, and reservoir backpacks |
| UNDER ARMOUR | 3,052,160 | January 31, 2006 | IC 009: Chin straps for use with protective helmets<br><br>IC 018: Toiletry kits, sold empty<br><br>IC 021: sports bottles, sold empty<br><br>IC 022: Lanyards for holding mouthpieces, water bottles, eyeglasses, badges, or keys<br><br>IC 024: Sports towels<br><br>IC 025: Gloves |

---

[2] The factual background is taken from Plaintiff's Complaint [ECF No. 1], Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction [ECF No. 4], Plaintiff's Motion for Entry of Final Default Judgment Against Defendants [ECF No. 31], and supporting evidentiary submissions.

3

| | | | |
|---|---|---|---|
| | 3,638,278 | June 16, 2009 | IC 035: Online retail store services featuring apparel, footwear, sporting goods, eyewear, headwear, wrist bands, sweat bands, belts, gloves, hand-warmers, plastic water bottles sold empty, watches, sports bags, tote bags, travel bags, backpacks, golf bags, messenger bags, duffel bags, shoe bags for travel, toiletry bags sold empty, wheeled bags, waist packs, sling bags, umbrellas, towels, posters; Mobile retail store services featuring apparel, footwear, and sporting goods. |
| | 3,722,112 | December 8, 2009 | IC 025: Ankle socks; Athletic footwear; Athletic uniforms; Baseball caps; Baseball shoes; Baseball uniforms; Baselayer bottoms; Baselayer tops; Beach footwear; Bib overalls; Boxer briefs; Boxer shorts; Briefs; Capri pants; Children's headwear; Coats; Dresses; Fleece pullovers; Football shoes; Foul weather gear; Golf shirts; Golf trousers; Hooded pullovers; Hooded sweat shirts; Hunting vests; Knit shirts; Ladies' underwear; Long-sleeved shirts; Men's socks; Men's underwear; Mittens; Moisture-wicking sports bras; Moisture-wicking sports pants; Moisture-wicking sports shirts; Polo shirts; Rain jackets; Rain trousers; Rainproof jackets; Rainwear; Running shoes; Short-sleeved shirts; Ski bibs; Ski gloves; Ski jackets; Ski pants; Ski wear; Sleeveless jerseys; Snow pants; Snowboard gloves; Snowboard mittens; Snowboard pants; Soccer boots; Sport shirts; Sports bras; Sports jackets; Sports jerseys; Sports pants; Sports shirts; Sweat bands; Sweat pants; Sweat shirts; Tennis wear; Thongs; Thongs; Training shoes; Undershirts; Unitards; Visors; Waterproof jackets and pants; Wind pants; Wind resistant jackets; Wind shirts. |

The Under Armour Marks are used in connection with the manufacture and distribution of goods in the categories identified above. *See* ECF No. 4-1 at ¶ 5; ECF No. 4-2 (containing Certificates of Registrations for the Under Armour Marks at issue).

Defendants, through the fully interactive commercial Internet websites and commercial iOffer Auction Stores, have advertised, promoted, offered for sale, or sold at least pants, shorts, t-shirts, shirts, polo shirts, tank tops, sports jerseys, sleeveless jerseys, wind-resistant jackets, underwear, socks, wristbands, hats, including baseball caps and visors, sports bags, backpacks, and toiletry bags, bearing what Plaintiff has determined to be counterfeits, reproductions, or colorable imitations of the Under Armour Marks. *See* ECF 4-1, ¶¶ 5, 9-14. Defendants are not now, nor have they ever been authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Under Armour Marks. *See* ECF No. 4-1 at ¶ 9.

Plaintiff retained AED Investigations, Inc., a licensed private investigative firm, to investigate the sale of counterfeit and infringing Under Armour-branded products by Defendants. *See* ECF No. 4-1 at ¶ 10; ECF No. 4-4 at ¶ 4; ECF No. 4-10 at ¶ 3. Eric Rosaler ("Rosaler"), an officer of AED Investigations, Inc., accessed the Internet website operating under the Subject Domain Name, **efeelsports.com**, and the commercial Internet iOffer auction store operating under the iOffer Auction Store, **hongtai8888**, placed orders for the purchase of a product from each online store, specifically, one sports jersey and one toiletry bag—each bearing counterfeits of at least one of the Under Armour Marks at issue in this action—and requested that each product be shipped directly to one of his addresses in the Southern District of Florida. *See* ECF Nos. 4-10 at ¶¶ 4-5; 4-11; 4-12. Rosaler finalized payment for the Under Armour-branded sports jersey ordered from efeelsports.com via PayPal, Inc. ("PayPal") to the PayPal account, nhatservice@gmail.com. *See* ECF Nos. 4-10 at ¶ 4; 4-11. Rosaler also effected payment via

5

PayPal for the Under Armour-branded toiletry bag ordered from the iOffer Auction Store, hongtai8888, to the PayPal account, pootoo123@126.com. *See* ECF Nos. 4-10 at ¶ 5; 4-12.

Further, Rosaler accessed Internet websites operating under the Subject Domain Names identified on the table below and went through the purchasing process[3] for various products, most of which bore counterfeits of at least one of the Under Armour Marks at issue in this action. *See* ECF Nos. 4-10 at ¶ 6; 4-13. Following submission of his orders, Rosaler received information for finalizing payment for each of the items ordered via PayPal or bank transfer to Defendants' respective PayPal or bank accounts as follows:

| Subject Domain Name | Payment Method | Account[4] |
|---|---|---|
| 51nfljersey.com | Bank Transfer | Bank Account Number: ****************9820<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: Lihuang Lin |
| 2013bestjerseysoutlet.com | Bank Transfer | Bank Account Number: ****************4603<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: Liang Jun Lin |
| 2013jerseysbynike.com | Bank Transfer | Bank Account Number: ****************2384<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: LiFeng Huang |
| anynfljerseys.com | Bank Transfer | Bank Account Number: ****************2140<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: Chen QunPing |

---

[3] Rosaler intentionally did not finalize his purchases from the Internet websites operating under the Subject Domain Names so as to avoid contributing funds to Defendants' coffers. *See* ECF No. 4-4 at ¶ 4.

[4] The full account numbers of all financial institution accounts identified herein have been redacted to avoid disclosure of private financial information, in compliance with Rule 5.2(a)(4), Fed. R. Civ. P.

6

| Subject Domain Name | Payment Method | Account[4] |
|---|---|---|
| aolmlb.co<br>cnjerseys.cc<br>cnjerseys.co[5] | Bank Transfer | Bank Account Number: ***************9554<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: Huang Yanchun |
| bematsoce.com[6] | Bank Transfer | Bank Account Number: ***************5177<br>Bank of China<br>SWIFT Code: BKCHCNBJ970<br>Account Owner: Zheng Yuan Hong |
|  | PayPal | runfangly@gmail.com |
| cheapjerseysaleonline.com | PayPal | wuxingcomeon@hotmail.com |
| cheapjerseysking.com | Bank Transfer | Bank Account Number: ***************5174<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: Lin Zhiping |
| cheapjerseysshop.cc | PayPal | 168168shop@gmail.com |
| cheapnhljerseysamerica.com<br>neweraretailstore.net[7] | Bank Transfer | Bank Account Number: **** **** **** ***0 657<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: Rongjiao Zhang |
| cooljerseysshop.com | PayPal | malongxin123@hotmail.com |
| gulfofmainefish.com | Bank Transfer | Bank Account Number: ***** **** ***** *1123<br>Bank of China<br>SWIFT Code: BKCHCNBJ720<br>Account Owner: Lin Jianzhong |

---

[5] Upon accessing the cnjerseys.co website, Rosaler was automatically redirected and forwarded to the website operating under the domain name, cnjerseys.cc. Rosaler received identical bank transfer information following his purchasing process from aolmlb.co and cnjerseys.cc. *See* ECF 4-10 at ¶ 6 n.4.

[6] Rosaler received information to finalize the purchasing process from bematsoce.com via both PayPal and bank transfer. *See* ECF 4-10 at ¶ 6, n.5.

[7] Rosaler received identical bank transfer information following his purchasing process from cheapnhljerseysamerica.com and neweraretailstore.net. *See* ECF 4-10 at ¶ 6, n.6.

7

| Subject Domain Name | Payment Method | Account[4] |
|---|---|---|
| jersell.com | Bank Transfer | Bank Account Number: ***** ***** ***** *7247<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: Liu Liang Qing |
| jerseyschinashop.net | Bank Transfer | Bank Account Number: ***************6272<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: TieCheng Liu |
| jerseysdh.com | PayPal | janemimin@gmail.com |
| jerseyshotbot.com | Bank Transfer | Bank Account Number: ****-****-****-***9-265<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: Binglong Shen |
| jerseysmass.com<br>2013nfljerseyswholesale.com[8] | Bank Transfer | Bank Account Number: **** **** **** ***0 250<br>Bank of China<br>SWIFT Code: BKCHCNBJ59A<br>Account Owner: Qiu De Liang |
| jerseysmen.cc | PayPal | lancejeffy1377@yeah.net |
| jerseyspos.com<br>reallycheapjerseys.com[9] | Bank Transfer | Bank Account Number: **** **** **** ***8 625<br>China Construction Bank<br>SWIFT Code: PCBCCNBJFJX<br>Account Owner: Zhiyong Jiang |
| jerseysstay.com | Bank Transfer | Bank Account Number: ***************3047<br>Bank of China<br>SWIFT Code: BKCH CNBJ73C<br>Account Owner: Li Lin |
| jersey-styles.com | PayPal | weddingdress08@163.com |

---

[8] Upon accessing the 2013nfljerseyswholesale.com website, Rosaler was automatically redirected and forwarded to the website operating under the domain name, jerseysmass.com.  *See* ECF 4-10 at ¶ 6, n.7.

[9] Rosaler received identical bank transfer information following his purchasing process from jerseyspos.com and reallycheapjerseys.com.  *See* ECF 4-10 at ¶ 6, n.8.

| Subject Domain Name | Payment Method | Account[4] |
|---|---|---|
| mlbsportjersey.com | Bank Transfer | Bank Account Number: **** **** **** ***9 962<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: Jinchun Huang |
| msnjerseys.com | Bank Transfer | Bank Account Number: ***-***-***-***-***-1288<br>Postal Saving Bank of China<br>SWIFT Code: PSBCCNBJ |
| projerseysworld.com | Bank Transfer | Bank Account Number: **** **** **** ***0 016<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: Qiurong Wen |
| selloffjerseys.com | PayPal | deathhead@163.com |
| vipfanjerseys.com | Bank Transfer | Bank Account Number: **** **** **** ***7 083<br>Bank of China<br>SWIFT Code: BKCHCNBJ73C<br>Account Owner: Guohui Chen |

*See* ECF Nos. 4-10 at ¶ 6; 4-13.

Rosaler also accessed the commercial Internet iOffer Auction Stores operating under the iOffer Auction Stores identified in the table below and went through the purchasing process[10] for various products, all of which bore counterfeits of at least one of the Under Armour Marks at issue in this action. *See* ECF Nos. 4-10 at ¶ 7; 4-14. Following submission of his orders, Rosaler received information for finalizing payment for the Under Armour branded items ordered via PayPal to Defendants' respective PayPal accounts as follows:

| iOffer Auction Store | PayPal Account |
|---|---|
| hongtai8888[11] | aoao0920@126.com |
| ifeng1688 | likindg@126.com |
| kuailetianshi168 | guonianla1588@163.com |

---

[10] Rosaler intentionally did not finalize his purchases from the Internet iOffer Auction Stores so as to avoid contributing funds to Defendants' coffers. *See* ECF No. 4-4 at ¶ 4.

[11] Rosaler received information to finalize payment via a different PayPal account during the purchasing process via the iOffer Auction Store, hongtai8888. ECF No. 4-10, ¶ 7 n.9.

| iOffer Auction Store | PayPal Account |
|---|---|
| marcyfeinberg | huizhang19810219@gmail.com |
| ssddshirt | pgzhouw@163.com |

*See* ECF Nso. 4-10 at ¶ 7; 4-14.

Thereafter, the detailed web page listings, including images of the Under Armour-branded products purchased by Rosaler from the commercial Internet website operating under the Subject Domain Name, efeelsports.com, and the commercial Internet auction store operating under the iOffer Auction Store, hongtai8888, were reviewed by Plaintiff's representative, who determined the products to be non-genuine, unauthorized Under Armour products. *See* ECF No. 4-1 at ¶¶ 10-11. Plaintiff's representative also reviewed and visually inspected Defendants' websites and iOffer auction stores, as well as pictures of items bearing the Under Armour Marks offered for sale by Defendants via their Subject Domain Names and iOffer Auction Stores and likewise determined that the products offered for sale were non-genuine Under Armour products. *See* ECF No. 4-1 at ¶¶ 12-14.[12]

B. Procedural Background

On December 29, 2013, Plaintiff filed its Complaint against Defendants. *See* ECF No. 1. On December 30, 2013, Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the

---

[12] Plaintiff recently discovered that Defendant msnjerseys.com (Defendant Number 24) is continuing to engage in and expand its illegal use of the Under Armour trademarks at issue in this action, without authorization, via the fully interactive, commercial Internet website operating under the domain name, msnclothes.com. The msnclothes.com website provides identical registrant information and identical onsite contact information as Defendant's Internet website operating under the domain name, msnjerseys.com, which has previously been confirmed to be offering for sale goods bearing counterfeits of one or more of Under Armour's trademarks at issue. *See* ECF Nos. 4-1 at ¶¶ 12-14; 31-1 at ¶ 5; 31-2 (website captures from the Internet website operating under msnclothes.com, reflecting products bearing the Under Armour Marks for sale by Defendant msnjerseys.com (Defendant Number 24), as well as the onsite contact information). As such, the msnclothes.com domain name is included in Schedule "A" attached hereto.

10

Counterfeiting Operation ["Application for Temporary Restraining Order"].  *See* ECF No. 4. On December 31, 2013, the Court entered an Order granting Plaintiff's Application for Temporary Restraining Order, *see* ECF No. 9, and subsequently converted the temporary restraining order into a preliminary injunction on January 14, 2014, *see* ECF No. 18. On February 14, 2014, Plaintiff filed its Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) ["Motion for Alternate Service of Process"]. *See* ECF No. 21.  The Court entered an Order granting Plaintiff's Motion for Alternate Service of Process on February 19, 2014.  *See* ECF No. 22.  Pursuant to the Court's Order Authorizing Alternate Service of Process, on February 21, 2014, Plaintiff served each Defendant with their respective Summons and a copy of the Complaint via electronic mail ("e-mail") and via publication service.  *See* ECF No. 31-1 at ¶ 7; ECF Nos. 25-27 (containing Proofs of Service as to Defendants).

As of the date of this Order, Defendants have failed to respond to the Complaint, despite the fact that the record reflects that Defendants were served in this case on February 21, 2014. *See* ECF Nos. 25-27.  On April 1, 2014, Plaintiff filed its Request for Clerk's Entry of Default [ECF No. 28], and the Clerk subsequently entered default against each Defendant on April 2, 2014, for failure to appear, plead, or otherwise defend pursuant to Rule 55(a), Fed. R. Civ. P. *See* ECF No. 29.  Plaintiff then moved for entry of Final Default Judgment.  *See* ECF No. 31. On April 15, 2014, the Court issued an Order directing counsel for Plaintiff to serve a copy of the Order and the Motion for Default Judgment on Defendants so that they could respond to the motion if they wished to do so.  ECF No. 33.  The Court provided Defendants with seven days from the date of service to respond to the Motion for Default Judgment and directed Plaintiff to file a notice with the Court certifying the date upon which such service had been accomplished.

*Id.* The Order also specifically warned that Defendants' "failure to timely respond may result in the granting of Plaintiff's Motion and the immediate entry of a default judgment against Defendants." *Id.* Plaintiff certified that it served Defendants with the Motion for Default Judgment on April 15, 2014. *See* ECF Nos. 34, 35. To date, however, Defendants have not responded to the Motion for Default Judgment, nor have Defendants responded to the Complaint.

### III. DEFAULT JUDGMENT STANDARD

Under Rule 55(a), Fed. R. Civ. P., if a defendant fails to plead or otherwise defend a complaint filed against it, the Clerk of Court may enter a default against that party. Once a default is entered, a plaintiff may seek entry of a default judgment against the defaulting defendant. Fed. R. Civ. P. 55(b).

By defaulting, a defendant is taken to admit the well-pleaded allegations of fact in a plaintiff's complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co., Ltd v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although facts are admitted as true, conclusions of law are not; a sufficient basis must still exist in the pleadings to state a claim before a court may enter a default judgment. *Nishimatsu*, 515 F.2d at 1206.

### IV. ANALYSIS

#### A. Claims

##### 1. Trademark Counterfeiting and Infringement Under 15 U.S.C. § 1114 (Count I)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on

its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

### 2. False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II)

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiff. 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim—*i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

### 3. Common Law Unfair Competition (Count III)

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false

designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)."); *see also Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

### B.  Liability

The well-pled factual allegations of Plaintiff's Complaint properly allege the elements for each of the claims described above.  *See* ECF No. 1 at ¶¶ 7-15, 25-33, 35-36, 38-40, 45-49, 53-55.  Moreover, the factual allegations in Plaintiff's Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Complaint.  Accordingly, default judgment pursuant to Rule 55, Fed. R. Civ. P., is appropriate.

### C.  Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law.  *See* 15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)).  Moreover, even in a default judgment setting, injunctive relief is available.  *See e.g.*, *Petmed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1222–23 (S.D. Fla. 2004).  Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction.  *See*

14

*Jackson v. Sturkie*, 255 F. Supp. 2d. 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006). Plaintiff has carried its burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. 1 at ¶¶ 35, 43, 51, 56. Further, the Complaint alleges, and the submissions by Plaintiff show, that the goods promoted, advertised, offered for sale, and sold by Defendants are nearly identical to Plaintiff's genuine products and that consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiff's genuine products. *See* ECF No. 1 at ¶ 33. "The net effect of Defendants' actions will cause confusion of consumers who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, and approved by Under Armour." *See* ECF No. 1 at ¶ 26.

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names and iOffer Auction Stores because Plaintiff cannot control the quality of what appears to be its products in the marketplace. *See* ECF No. 1 at ¶¶ 34, 41, 51, 56. An award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act.

Finally, the public interest supports the interest in the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. *See Nike, Inc. v. Leslie*, No. 85-960-15, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

The Court's broad equity powers allow it to fashion injunctive relief necessary to stop the Defendants' infringing activities. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case." (internal quotation marks omitted; citation omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name. *See* 15 U.S.C. § 1125(d)(1)(C),

16

(d)(2). However, courts have not limited the remedy to that context. *See, e.g.*, *Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230–31 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities. Ordering the cancellation or transfer of the Subject Domain Names identified on Schedule "B" of Plaintiff's Motion for Entry of Final Default Judgment [ECF No. 31 at 18-21] to Plaintiff, where they may be disabled from further use as platforms for the sale of counterfeit goods, is appropriate to achieve this end.[13]

### D. Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than

---

[13] Defendants 1-27 operate commercial Internet websites under their partnership names, unincorporated association names, or both (the "Subject Domain Names"), whereas Defendants 28-32 operate commercial Internet iOffer auction stores (the "iOffer Auction Stores") via third-party marketplace websites, as opposed to commercial Internet websites. Plaintiff has limited its transfer request to the Subject Domain Names only, all of which are identified on Schedule "B" of Plaintiff's Motion for Entry of Final Default Judgment. *See* ECF No. 31 at 18-21.

$1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to determine the amount of statutory damages. *Petmed Express, Inc.*, 336 F. Supp. 2d at 1219 (*citing Cable/Home Commc'n Corp. v. Network Prod.*, Inc., 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, et al., No. Civ. A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also Petmed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

Here, the allegations in the Complaint, which are taken as true, clearly establish that Defendants intentionally copied the Under Armour Marks for the purpose of deriving the benefit of Plaintiff's international reputation. Regardless, Defendants have defaulted on Plaintiff's allegations of willfulness. *See* ECF No. 1 at ¶ 32; *see also Arista Records, Inc. v. Beker Enter.*,

18

Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (finding that a court may infer willfulness from the defendants' default); *Petmed Express, Inc.*, 336 F. Supp. 2d at 1217 (upon default, well-pled allegations are taken as true)).  The Lanham Act permits the Court to award up to $2,000,000.00 dollars per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The only available evidence in this case demonstrates that Defendants distributed, advertised, offered for sale, or sold at least seventeen types of goods—pants, shorts, t-shirts, shirts, polo shirts, tank tops, sports jerseys, sleeveless jerseys, wind-resistant jackets, underwear, socks, wristbands, baseball caps, visors, sports bags, backpacks, and toiletry bags—bearing marks that were in fact counterfeits of the Under Armour Marks protected by six federal trademark registrations for such goods.  *See* ECF Nos. 1, ¶¶ 16, 25-33, 38-40; 4-1 at ¶¶ 5, 9-14.  Based on the above considerations, Plaintiff has asked the Court to begin with the baseline statutory minimum award of $3,000.00 per trademark infringed, treble that amount in light of Defendants' willful infringement, and again double it for purposes of deterrence. This yields $18,000.00 in statutory damages per trademark infringed. Six marks were infringed across the seventeen types of goods counterfeited, so Plaintiff is entitled to $1,836,000.00 in statutory damages. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c).  The Court finds that this award of statutory damages is just.

### E. Costs

Plaintiff also requests the Court award costs in the total amount of $750.00, consisting of the filing fee ($400.00) and the process server fee ($350.00). *See* ECF No. 31-1 ¶¶ 13-14). Plaintiff is entitled to these costs. *See* 15 U.S.C. § 1117(a); 28 U.S.C. § 1920.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Entry of Final Default Judgment Against Defendants [ECF No. 31] is **GRANTED**. Counsel for Plaintiff is directed to serve this Order on Defendants and certify with the Court the date of such service within one week of the date of this Order. Pursuant to Rule 58(a), Fed. R. Civ. P., a separate final judgment will be entered in this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 23rd day of April 2014.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record